# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LANDALE SIGNS AND NEON, LTD., | |
| Plaintiff, | Case No. 16-cv-7619 |
| v. | |
| RUNNION EQUIPMENT CO. and JOHN DOE, | Judge John Robert Blakey |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Landale Signs and Neon, Ltd. ("Plaintiff") contracted to purchase a truck-mounted crane from Defendant Runnion Equipment Company ("Defendant" or "Runnion"). During the pendency of that sale, an unknown third party (Defendant John Doe) intercepted information related to the transaction, utilized that information to pose as Runnion, and convinced Plaintiff to wire the vehicle's purchase price to him. Plaintiff alleges that Runnion, by allowing Defendant John Doe to intercept its information, is liable under theories of negligence, negligent misrepresentation, breach of fiduciary duty, and breach of contract (both express and implied). [22] at 5-14. Runnion has moved to dismiss all five claims. [13] (moving to dismiss claims for negligence, negligent misrepresentation, and breach of fiduciary duty); [23] (moving to dismiss claims for breach of express contract and breach of implied contract). For the reasons explained below, Runnion's motions are granted.

## I. Background[1]

In April of 2016, Plaintiff and Runnion executed a sales contract for a truck-mounted crane worth $87,625. [22] at 3. During the preceding negotiations, Plaintiff and Runnion communicated, at least in part, via e-mail. *Id.* On May 12, 2016, Plaintiff received an e-mail, ostensibly from Runnion, with instructions on how to wire the payment to Runnion pursuant to the terms of the agreement. *Id.* Plaintiff followed these instructions and remitted payment for the agreed amount of $87,625. *Id.*

Runnion subsequently informed Plaintiff that it never received the payment. *Id.* In response, Plaintiff showed Runnion the string of e-mails wherein an entity purporting to be Runnion instructed Plaintiff on how to make payment for the vehicle. *Id.* Plaintiff now alleges that Runnion's computer network, database, and servers were accessed by Defendant John Doe, who utilized the information he or she intercepted from Runnion in order to pose as Runnion and fraudulently instruct Plaintiff to wire him or her $87,625. *Id.*

Plaintiff further alleges that Runnion was aware or should have been aware that its computer network, database, and servers were being improperly accessed by Defendant John Doe. *Id.* at 4. During the parties' negotiations, Plaintiff's President, Mr. Darrell Brown, noticed that there was a delay in receiving e-mails from Runnion's President, Mr. Patrick Runnion. *Id.* Mr. Brown inquired as to the cause of this delay, and Mr. Runnion indicated that he was aware of potential

---

[1] This section is based upon Plaintiff's Second Amended Complaint. [22] at 1-15.

interference with his e-mail account. *Id.* Mr. Runnion further represented that an unknown party had previously been intercepting his e-mails during a prior transaction (though Runnion in that instance was able to avert any potential theft). *Id.*

Based upon the foregoing, Plaintiff brought claims against Runnion (for negligence, negligent misrepresentation, breach of fiduciary duty, breach of express contract, and breach of implied contract) and Defendant John Doe (for conversion and fraud). *Id.* at 5-11. Defendant John Doe has not yet been identified or served, while Runnion has moved to dismiss the claims pending against it.

## II. Legal Standard

To survive Defendant's motion under Federal Rule of Civil Procedure 12(b)(6), the Second Amended Complaint must "state a claim to relief that is plausible on its face." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This Court must construe the Complaint in the light most favorable to Plaintiff, accept as true all well-pleaded facts, and draw all reasonable inferences in its favor. *Id.*; *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Statements of law, however, need not be accepted as true. *Yeftich*, 722 F.3d at 915. Rule 12(b)(6) limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is

3

properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

## III. Analysis

Plaintiff's claims against Runnion sound in: (1) negligence; (2) negligent misrepresentation; (3) breach of fiduciary duty; (4) breach of express contract; and (5) breach of implied contract. The Court will address each in turn.

### A. Negligence

To adequately state a claim for negligence under Illinois law, a party must allege that "the defendant owed him a duty, that the defendant breached this duty, and that he suffered an injury that was proximately caused by the defendant's breach." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009).

#### 1. Economic Loss Doctrine

Runnion initially argues that Plaintiff's negligence claim fails pursuant to *Moorman Manufacturing Company v. National Tank Company*, 435 N.E. 2d 443 (Ill. 1982). *Moorman* brought the "economic loss" doctrine to Illinois, such that plaintiffs could no longer sue in tort for certain claims seeking the "recovery of solely economic loss." *Id.* at 448. *Moorman* defined "economic loss" as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property." *Id.* at 449 (internal citation omitted). By its own terms, the *Moorman* economic loss doctrine does not apply where "a duty arises outside of a contract." *Nixon v. United States*, 916 F. Supp. 2d 855, 861–62 (N.D. Ill. 2013) (internal

quotations omitted); *see also R.J. O'Brien & Assocs., Inc. v. Forman,* 298 F.3d 653, 656 (7th Cir. 2002) ("*Moorman* dictates that, when a contract sets out the duties between the parties, recovery should be limited to contract damages, even though recovery in tort would otherwise be available."); *Golf v. Henderson*, 876 N.E.2d 105, 113 (Ill. App. Ct. 2007) ("The *Moorman* doctrine, however, does not apply when a duty arises that is extracontractual."). In the end, when attempting to determine whether the economic loss doctrine applies, "the key question is whether the defendant's duty arose by operation of contract or existed independent of the contract." *Wigod v. Wells Fargo Bank*, 673 F.3d 547, 567–568 (7th Cir. 2012)

For the purposes of its negligence claim here, Plaintiff explicitly characterizes Runnion's duty as arising outside of the parties' contract. [17] at 8 ("In this instance, Runnion's duty to protect Landale's sensitive information was independent from the parties' contractual agreement."). Because the putative duty at issue here is grounded in Illinois common law, as opposed to the parties' contract, the economic loss doctrine fails to apply. *Wigod*, 673 F.3d at 658 (economic loss doctrine does not apply when the defendant's duty "existed independent of the contract").

### 2. Common Law Duty

Plaintiff's attempt to invoke a common law duty to safeguard another party's information implicates an obvious question; namely, whether such a duty actually exists as a matter of Illinois law. This "is a question of law for the court to decide." *Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1096 (Ill. 2012) (internal

5

quotations omitted). The rulings of the Illinois Supreme Court are controlling on this issue. *See ADT Sec. Servs. v. Lisle–Woodridge Fire Prot. Dist.,* 672 F.3d 492, 498 (7th Cir. 2012). Absent a definitive ruling from the Illinois Supreme Court, this Court will also look to decisions from the Illinois Appellate Court. *See Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 635 (7th Cir. 2007) ("[W]hen the intermediate appellate courts of the state have spoken to the issue, we shall give great weight to their determination about the content of state law, absent some indication that the highest court of the state is likely to deviate from those rulings.").

The Illinois Supreme Court has not yet determined whether there is a common law duty to safeguard another party's confidential information. The Illinois Appellate Court, however, had occasion to consider this theory in *Cooney v. Chicago Public Schools*, 943 N.E.2d 23 (Ill. App. Ct. 2010), *appeal denied*, 949 N.E.2d 657 (Ill. 2011) (table decision). *Cooney* was initiated after the Chicago Board of Education enlisted a contractor to print and mail more than 1,700 packets of health insurance information to former Chicago public school employees. *Id.* at 27. The contractor packaged and mailed the materials in such a way that each recipient received information about every other recipient, including their names, addresses, marital status, and social security numbers. *Id.* A number of individual and class-action lawsuits were brought against the Board of Education and the contractor, alleging various statutory violations, invasion of privacy, negligence, and other claims. *Id.* The lawsuits were consolidated into one case, which the Circuit Court of Cook County dismissed, and the employees appealed. *Id.*

On appeal, the plaintiffs in *Cooney* specifically requested that the Illinois Appellate Court "recognize a new common law duty to safeguard information." *Id.* at 28. Plaintiffs suggested that the imposition of such a duty was "justified by the sensitive nature of personal data such as dates of birth and social security numbers." *Id.* While the Illinois Appellate Court explicitly acknowledged the "importance of protecting this information," it declined to create "a new legal duty [to safeguard another party's private information] beyond legislative requirements already in place." *Id.*

Other federal courts tasked with interpreting Illinois law have explicitly relied upon *Cooney* for the proposition that, "with regard to data security, Illinois courts have specifically declined to recognize a common law duty to safeguard personal information." *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, No. 15-cv-01125, 2016 WL 5409014, at *12 (S.D. Ill. Sept. 28, 2016); *Dolmage v. Combined Ins. Co. of Am.*, No. 14-cv-3809, 2015 WL 292947, at *5–6 (N.D. Ill. Jan. 21, 2015) ("Because there is no common law duty to protect personal information in Illinois [citing *Cooney*], Plaintiff has failed to state a claim for negligence."); *Worix v. MedAssets, Inc.*, 869 F. Supp. 2d 893, 897–98 (N.D. Ill. 2012) (In light of this statement in *Cooney*, the district court declined "to adopt a substantive innovation in Illinois law or to invent what would be a truly novel tort claim on behalf of the state absent some authority to suggest that the approval of the Supreme Court of Illinois is forthcoming.") (internal quotations omitted).

This Court is similarly convinced by *Cooney*. Plaintiff's negligence claim is premised upon a common law duty which does not exist under Illinois law, and it is accordingly dismissed with prejudice.

**B.     Negligent Misrepresentation**

The elements of a negligent misrepresentation claim under Illinois law are: (1) a duty on the part of defendant to communicate accurate information; (2) a false statement of material fact; (3) carelessness or negligence by defendant in ascertaining the truth of the statement; (4) an intention to induce plaintiff to act; (5) an action by plaintiff in reliance on the truth of the statement; and (6) damages. *See F:A J Kikson v. Underwriters Labs., Inc.*, 492 F.3d 794, 801 (7th Cir. 2007).

1.     **False Statement**

Plaintiff fails to identify a single "false statement of material fact" made by Runnion. Instead, Plaintiff alleges that it "was implied based upon Runnion's statements and representations that Runnion was safeguarding information relating to the transaction between Runnion and Landale from outside third parties." [22] at 7; *see also id.* at 4 ("Mr. Runnion further represented that he was advised that someone had been intercepting his e-mails during a prior transaction; however, a warning sign had been noticed and a potential theft during the transaction had been averted.").

These allegations do not reflect a specific misleading statement from Runnion to Plaintiff. At most, these statements from Runnion "fall into the categories of expression of opinion or future projection, which are not actionable." *Marconi v.*

8

*Indiana Mun. Power Agency, ISC, Inc.*, No. 14-cv-7291, 2016 WL 4530307, at *7 (N.D. Ill. Aug. 30, 2016). Absent a misleading statement from Runnion to Plaintiff, Plaintiff's negligent misrepresentation claim fails. *See F:A J Kikson*, 492 F.3d at 801 (reversing judgment on negligent misrepresentation claim, after plaintiff could not "come up with" adequate misrepresentations made by defendant); *Galanis v. Starbucks Corp.*, No. 16-cv-4705, 2016 WL 6037962, at *3 (N.D. Ill. Oct. 14, 2016) (granting motion to dismiss plaintiff's negligent misrepresentation claim because plaintiff "has failed to allege a misleading statement"); *Toulon v. Cont'l Cas. Co.*, No. 15-cv-138, 2015 WL 4932255, at *4 (N.D. Ill. Aug. 18, 2015) (holding that "plaintiff has not alleged a false statement of material fact and thus her negligent misrepresentation claim fails").

### 2. Duty

Plaintiff's negligent misrepresentation claim also fails insofar as Runnion did not have a duty "to communicate accurate information" to Plaintiff. *Id.* A duty to communicate accurate information exists under Illinois law "when the plaintiff and the defendant stand in such a relationship that the law imposes upon the defendant an obligation of reasonable conduct for the plaintiff's benefit." *Auto-Owners Ins. Co. v. Konow,* 57 N.E.3d 1244, 1247 (Ill. App. Ct. 2016) (internal quotation omitted). Practically, this means the duty to provide accurate information arises: "(1) when conveying false information results in physical injury to a person or harm to a property, or (2) where the defendant is in the business of supplying information for the guidance of others in the business." *See Asad v. Hartford Life Ins. Co.*, 116 F.

Supp. 2d 960, 964–65 (N.D. Ill. 2000). Plaintiff has not alleged that it suffered a physical injury or the requisite harm to property, *see generally* [22], nor has Plaintiff suggested that Runnion is "in the business of supplying information for the guidance of others." *Id.*; *see also Fischer Indus. Inc. v. Medivance Instruments, Ltd.*, No. 89-cv-9082, 1992 WL 686866, at *11 (N.D. Ill. Aug. 31, 1992) ("Courts faced with negligent misrepresentation claims have strictly enforced the requirement that defendant be in the business of supplying information.") (internal quotation omitted). Accordingly, Runnion was not obligated to convey accurate information to Plaintiff under Illinois law.

In light of both Plaintiff's failure to identify a specific factual misrepresentation by Runnion and the absence of a duty to convey accurate information, Plaintiff's negligent misrepresentation claim is dismissed with prejudice.

### C. Breach of Fiduciary Duty

To state a claim for breach of fiduciary duty, Plaintiff must adequately allege that Runnion owed it a fiduciary duty, and that duty must exist as a matter of law. *Cooney,* 943 N.E.2d at 29 (internal quotation omitted). Defendant contends that no fiduciary duty existed between the two parties as a matter of law, such that Plaintiff's claim for breach of fiduciary duty must fail.

Under Illinois law, "there are two ways a fiduciary duty" can arise: (1) automatically pursuant to specific legal relationships, such as those between attorneys and their clients; or (2) by virtue of circumstances unique to the parties'

relationship, where one party places trust in another so that the latter gains superiority and influence over the former. *O'Brien v. O'Neill*, No. 1-cv-7830, 2007 WL 684116, at *4 (N.D. Ill. Feb. 28, 2007) (internal quotation omitted). Plaintiff acknowledges that no "automatic" duty exists here, but suggests that the nature of the parties' relationship gave rise to a fiduciary duty. More specifically, Plaintiff argues that because it "had no ability to review or analyze whether Runnion had sufficient protections in place to safeguard the interception of the information," it was forced "to place its trust and confidence in Runnion that it was sufficiently protecting this information." [17] at 11 (citing *Ransom v. A.B. Dick Co.*, 682 N.E.2d 314 (Ill. App. Ct. 1997)).

Plaintiff's position is inconsistent with established Illinois law. Even *Ransom*, the principal case cited by Plaintiff, acknowledges that "ordinarily in a business transaction each party guards his own interests and no fiduciary duty exists." *Ransom*, 682 N.E.2d at 322; *see also Al Maha Trading & Contracting Holding Co. v. W.S. Darley & Co.*, 936 F. Supp. 2d 933, 946 (N.D. Ill. 2013) (A "*slightly dominant* business position does not operate to turn a formal, contractual relationship into a confidential or fiduciary relationship.") (internal quotation omitted) (emphasis added). Moreover, simply trusting another party to maintain "confidential" information is also insufficient to create a fiduciary duty. *See Dolmage v. Combined Ins. Co. of Am.*, No. 14-cv-3809, 2015 WL 292947, at *6 (N.D. Ill. Jan. 21, 2015); *see also Cooney,* 943 N.E.2d at 29 ("Plaintiffs' sole contention is

that a fiduciary duty was created when they provided the Board with information 'in confidence.' Plaintiffs cite to no authority supporting such a duty.").

None of Plaintiff's allegations justify a departure from the established Illinois rule that neither the exchange of confidential information nor the existence of a formal business relationship gives rise to fiduciary obligations. The parties here simply exchanged the information necessary to effectuate a sale. Inferring the existence of a fiduciary relationship under these circumstances would turn Illinois law on its head. Plaintiff's claim for breach of fiduciary duty is accordingly dismissed with prejudice.

### D. Breach of Express Contract

The parties agree regarding the required elements for a breach of express contract claim under Illinois law: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) a breach by the defendant; and (4) an injury. *See VanDerMolen v. Washington Mutual Finance, Inc.*, 835 N.E.2d 61, 69 (Ill. App. Ct. 2005). Both parties also acknowledge that they executed a sales contract concerning the vehicle at issue, though they disagree as to its terms.[2] Plaintiff now alleges that Defendant breached their sales contract by failing "to protect Landale's payment under the contract." [26] at 4.

#### 1. Plausibility

Defendant first argues that Plaintiff's breach of express contract claim should be dismissed, as it "simply is not plausible" to suggest that the sales contract at

---

[2] Unfortunately, neither party submitted the actual sales contract to the Court or quoted the relevant portions in their briefing.

issue here imposed upon Runnion an obligation to secure or otherwise protect the information exchanged between the parties. [24] at 4.

Defendant's argument overstates Plaintiff's burden at this preliminary stage. Even though "Plaintiff has not attached" the operative sales contract, the Court must nevertheless "accept Plaintiff's factual allegations as true and draw all reasonable inferences in Plaintiff's favor." *Dolmage*, 2015 WL 292947, at *7; *see also Odeluga v. PCC Cmty. Wellness Ctr.*, No. 12-cv-07388, 2013 WL 4552866, at *7 (N.D. Ill. Aug. 27, 2013) ("Under Illinois state civil procedure, a plaintiff asserting a claim based on a written contract must attach that contract to her pleadings. Federal Rule of Civil Procedure 8, however, makes no similar demand and, instead, requires only a short and plain statement of the plaintiff's claims.") (internal quotation omitted).

In its Second Amended Complaint, Plaintiff alleges that: (1) Defendant had a previous security failure; (2) the parties discussed Defendant's previous security failure "[d]uring the negotiations" regarding the vehicle at issue; (3) the parties then entered into a sales contract; (4) Defendant's security was compromised again, resulting in damage to Plaintiff; and (5) Defendant's second security failure constituted a breach of its confidentiality obligations under the parties' sales contract. [22] at 1–6, 11–12. After drawing all reasonable inferences in Plaintiff's favor, it is plausible to surmise that the parties' sales contract included confidentiality obligations that addressed the security concerns discussed by the parties during their negotiations. At this stage, "Plaintiff has sufficiently alleged

that [the confidentiality obligations were] part of the contract between Plaintiff and Defendant." *Dolmage*, 2015 WL 292947, at *7.

### 2. Economic Loss Doctrine

Runnion also invokes the *Moorman* doctrine in response to Plaintiff's breach of express contract claim, but this argument is without merit. Runnion acknowledges that it "enter[ed] into the contract in question," [24] at 5, and the Court has determined that Plaintiff has plausibly alleged that the contract itself contained confidentiality obligations. *See supra* at 13. The economic loss doctrine, which merely prohibits a "claim for economic losses under a tort theory," is inapposite. *Fischer Indus. Inc.*, 1992 WL 686866, at *10.

### 3. Plaintiff's Failure to Perform

Finally, Runnion argues that because it "certainly never received the amount due and owing from the Plaintiff under the terms of the contract," Plaintiff "never fully performed under the contract," and its breach of contract claim should be dismissed. [24] at 4. To be sure, performance by the plaintiff is an essential element of breach of contract claims under Illinois law. *See Veath v. Specialty Grains, Inc.*, 546 N.E.2d 1005, 1013 (Ill. App. Ct. 1989) ("It is a fundamental principle of the law that in order for one to recover upon a contract, he must have performed his part of the contract.") (internal quotation omitted); *see also 360networks Tenn., LLC v. Illinois Cent. R. Co.*, No. 05-cv-3198, 2010 WL 2167394, at *2 (N.D. Ill. May 28, 2010) (To "recover for a breach of contract, a plaintiff must

prove, *inter alia,* that it complied with all of its material obligations under the contract.") (internal quotation omitted).

Plaintiff concedes that "John Doe receiv[ed] Landale's payment" owed under the contract. [26] at 4. Plaintiff nevertheless insists that it may sue for breach of contract, as it "*attempted* to complete its performance under the contract by remitting payment," but its "performance was rendered ineffective" due to "Runnion's failure to protect its computer systems." *Id.* (emphasis added). Plaintiff cites no legal authority in support of this argument; indeed, Plaintiff fails to even identify the legal doctrine it is attempting to invoke. *Id.*

In short, Plaintiff acknowledges that it has not performed its obligations under the sales contract, and it has not made a legal argument to excuse its non-performance. Because performance by the plaintiff is an essential prerequisite to breach of express contract claims under Illinois law, Plaintiff's claim for breach of express contract is dismissed.[3]

---

[3] The Court's analysis would remain unchanged even presuming that Plaintiff was invoking either: (1) the doctrine of impossibility of performance; or (2) the notion that a putative plaintiff is relieved of its obligation to perform if the defendant commits a preceding material breach. The former is "narrowly applied," reserved for "extreme circumstances," and only applies where performance is "rendered objectively impossible due to destruction of the subject matter of the contract or by operation of law." *YPI 180 N. LaSalle Owner, LLC v. 180 N. LaSalle II, LLC*, 933 N.E.2d 860, 865 (Ill. App. 3d. 2010) (internal quotations omitted). The latter does not apply because Plaintiff does not allege, and the Court cannot plausibly infer on the record before it, that Runnion's putative confidentiality obligations were "material" under Illinois law. *See Arnhold v. Ocean Atl. Woodland Corp.*, 132 F. Supp. 2d 662, 669–70 (N.D. Ill. 2001) *aff'd sub nom.* 284 F.3d 693 (7th Cir. 2002) (When "determining whether failure of performance constitutes a material breach of the contract provision," Illinois courts ask "whether performance of that provision was a *sine qua non* of the contract's fulfillment.").

**E. Breach of Implied Contract**

Plaintiff alleges, in the alternative to its breach of express contract claim, that the parties entered into an implied contract[4] that imposed confidentiality obligations upon Runnion. [22] at 13. An implied contract arises "from a promissory expression that may be inferred from the facts and circumstances that demonstrate the parties' intent to be bound." *Trapani Const. Co.*, ---N.E.3d---, 2016 WL 5366275, at *7 (Ill. App. Ct. Sept. 23, 2016). Under Illinois law, "in order to prove an implied contract the party asserting the contract must show the same elements as an express contract, as well as a meeting of the minds and a mutual intent to contract." *New v. Verizon Commc'ns, Inc.*, 635 F. Supp. 2d 773, 782–83 (N.D. Ill. 2008).

Defendant argues that Plaintiff's claim for breach of implied contract must fail, because Plaintiff does not allege that the parties had "a mutual intent to enter into" any ostensible agreement. [24] at 6. Here again, Plaintiff essentially concedes Defendant's point:

> Under Illinois law, there need not be any affirmative evidence of intent by Runnion to safeguard Landale's financial information; it is implicit within the terms of the agreement. *Therefore, Landale need not plead specific facts regarding Runnion's agreement to protect its financial information to support a claim for breach of implied contract.* It only needs to allege an agreement was made for purchase of a product involving the transmission of Landale's financial data, and that such

---

[4] In Illinois, "two types of implied contracts are recognized, those implied in fact and those implied in law." *Trapani Const. Co.*, ---N.E.3d---, 2016 WL 5366275, at *7 (Ill. App. Ct. Sept. 23, 2016). The parties presume that Plaintiff's claim is for breach of a contract implied in fact, and the Court does the same.

16

> financial data was compromised due to Runnion's lack of safeguards.

[26] at 6 (emphasis added).

Plaintiff's position is contrary to Illinois law. A "meeting of the minds" is a fundamental prerequisite to a claim for breach of implied contract. *See Nissan N. Am., Inc. v. Jim M'Lady Oldsmobile, Inc.*, 486 F.3d 989, 996 (7th Cir. 2007) (To pursue a claim for breach of implied contract, a plaintiff in Illinois "must show a mutual intent to contract, a meeting of the minds."); *Brody v. Finch Univ. of Health Scis./The Chicago Med. Sch.*, 698 N.E.2d 257, 265 (Ill. App. Ct. 1998) ("A contract implied in fact contains all of the elements of an express contract, as well as a meeting of the minds.").

Nevertheless, Plaintiff attempts to save this claim by invoking cases that allowed consumers to pursue breach of implied contract theories against retailers whose data had been breached. [26] at 5 (citing *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518 (N.D. Ill. 2011)). Plaintiff's reliance upon these cases is misplaced. *In re Michaels*, for example, is explicitly premised upon the fundamental rule that an "implied in fact contract is created by the parties' conduct and contains all of the elements of an express contract—offer, acceptance, and consideration—as well as a meeting of the minds." *Id.* at 531. *In re Michaels* simply stands for the unremarkable proposition that in the context of a consumer/retailer relationship, a consumer could plausibly allege that the parties had reached a meeting of the minds regarding the retailer's obligation to safeguard the consumer's data. *Id.*

17

No such inference can reasonably be made here, given that Plaintiff explicitly acknowledged its failure to allege that a meeting of the minds actually took place regarding Runnion's confidentiality obligations. [26] at 6 ("Therefore, Landale need not plead specific facts regarding Runnion's agreement to protect its financial information to support a claim for breach of implied contract."). Because Plaintiff failed to allege that the requisite "meeting of the minds" had taken place and Plaintiff has not performed its obligations under the putative contract, its claim for breach of implied contract is dismissed.

## IV. Conclusion

Runnion's motions to dismiss [13, 23] are granted. Plaintiff's claims against Runnion for negligence (Count I), negligent misrepresentation (Count II), and breach of fiduciary duty (Count III) are dismissed with prejudice, while Plaintiff's claims for breach of express contract (Count VI) and breach of implied contract (VII) are dismissed without prejudice.

Dated: December 22, 2016

                                        Entered:

                                        John Robert Blakey
                                        United States District Judge