UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LANDALE SIGNS AND NEON, LTD., | |
| Plaintiff, | Case No. 16-cv-7619 |
| v. | |
| RUNNION EQUIPMENT CO. and JOHN DOE, | Judge John Robert Blakey |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Landale Signs and Neon, Ltd. ("Plaintiff") contracted to purchase a truck-mounted crane from Defendant Runnion Equipment Company ("Defendant" or "Runnion"). During the pendency of that sale, an unknown third party (Defendant John Doe) intercepted information related to the transaction, utilized that information to pose as Runnion, and convinced Plaintiff to wire the vehicle's purchase price to him. Plaintiff has, at various points, alleged that Runnion is liable under theories of negligence, negligent misrepresentation, breach of fiduciary duty, and breach of contract (both express and implied). [22] at 5-14.

On December 22, 2016, the Court dismissed Plaintiff's Second Amended Complaint. [29] at 1-19. The dismissal of Plaintiff's contractual theories, however, was without prejudice, and Plaintiff re-alleged those same contractual claims in its Third Amended Complaint. [33] at 1-13.

Two motions are currently before the Court: Plaintiff's request that the Court reconsider its dismissal with prejudice of Plaintiff's negligence claim, [31] at 1-4, and Runnion's motion to dismiss Plaintiff's Third Amended Complaint, [34] at 1-5. As more fully explained below, both motions are denied.

I.  **Background**[1]

In April of 2016, Plaintiff and Runnion executed a sales contract for a truck-mounted crane worth $87,625. [33] at 3. During the preceding negotiations, Plaintiff and Runnion communicated, at least in part, via e-mail. *Id.* On May 12, 2016, Plaintiff received an e-mail, ostensibly from Runnion, with instructions on how to wire the payment to Runnion pursuant to the terms of the agreement. *Id.* Plaintiff followed these instructions and remitted payment for the agreed amount of $87,625. *Id.*

Runnion subsequently informed Plaintiff that it never received the payment. *Id.* In response, Plaintiff showed Runnion the string of e-mails wherein an entity purporting to be Runnion instructed Plaintiff on how to make payment for the vehicle. *Id.* Plaintiff now alleges that Runnion's computer network, database, and servers were accessed by Defendant John Doe, who utilized the information he or she intercepted from Runnion to pose as Runnion and fraudulently instruct Plaintiff to wire him or her $87,625. *Id.* at 3-4.

Plaintiff further alleges that Runnion was aware or should have been aware that its computer network, database, and servers were being improperly accessed

---

[1] This section is based upon Plaintiff's Third Amended Complaint. [33] at 1-17.

by Defendant John Doe. *Id.* at 4. During the parties' negotiations, Plaintiff's President, Mr. Darrell Brown, noticed that there was a delay in receiving e-mails from Runnion's President, Mr. Patrick Runnion. *Id.* Mr. Brown inquired as to the cause of this delay, and Mr. Runnion indicated that he was aware of potential interference with his e-mail account. *Id.* Mr. Runnion further represented that an unknown party had previously been intercepting his e-mails during a prior transaction (though Runnion in that instance was able to avert any potential theft). *Id.*

Plaintiff now alleges that, as part of the foregoing negotiations, Runnion "agreed to complete the transaction with the intent to safeguard any sensitive information from disclosure to third parties," and the "parties' mutual intent constitute[d] a meeting of the minds regarding safeguarding sensitive information from disclosure to third parties." *Id.* at 12.

## II. Legal Standard

To survive Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Third Amended Complaint must "state a claim to relief that is plausible on its face." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This Court must construe the Complaint in the light most favorable to Plaintiff, accept as true all well-pleaded facts, and draw all reasonable inferences in its favor. *Id.*; *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th

3

Cir. 1999). Statements of law, however, need not be accepted as true. *Yeftich*, 722 F.3d at 915. Rule 12(b)(6) limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

Plaintiff's motion for reconsideration, meanwhile, is made pursuant to Federal Rule of Civil Procedure 60(b)(1), which permits the Court, in the exercise of its discretion, to relieve a party from an order on the grounds of "mistake, inadvertence, surprise, or excusable neglect." Relief under Rule 60(b)(1) is "regarded as an extraordinary remedy which is granted only in exceptional circumstances." *Longs v. City of S. Bend*, 201 F. App'x 361, 364 (7th Cir. 2006).

### III. Analysis

#### A. Plaintiff's Motion for Reconsideration

To adequately state a claim for negligence under Illinois law, a party must allege that "the defendant owed him a duty, that the defendant breached this duty, and that he suffered an injury that was proximately caused by the defendant's breach." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009). The Court previously ruled that because Illinois law does not recognize a duty to safeguard another party's confidential information, Plaintiff's negligence claim was untenable. [29] at 6-8. The Court declines to revisit this determination, as more fully explained below.

4

To determine whether a particular duty exists under Illinois law, federal courts look first to the Illinois Supreme Court. *See ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 672 F.3d 492, 498 (7th Cir. 2012) ("These questions are ones of first impression. Our duty is to interpret the Act as best we predict the Illinois Supreme Court would."). Absent a ruling from the Illinois Supreme Court, federal courts turn to decisions of the Illinois Appellate Court, which are accorded "great weight." *See Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 635 (7th Cir. 2007). In fact, when determining the "content of state law," this Court will not depart from the rulings of the Illinois Appellate Court "absent some indication that the highest court of the state is likely to deviate from those rulings." *Id.*

The Illinois Appellate Court has already declined to create "a new legal duty [to safeguard another party's private information] beyond legislative requirements already in place." *Cooney v. Chicago Public Schools*, 943 N.E.2d 23, 29 (Ill. App. Ct. 2010), *appeal denied*, 949 N.E.2d 657 (Ill. 2011) (table decision). There is also no "indication" that the Illinois Supreme Court would deviate from *Cooney*'s holding; indeed, the plaintiffs' appeal in *Cooney* was denied. *Id.*

Plaintiff's renewed attempts to evade *Cooney* are unavailing. First, Plaintiff suggests that this Court erred by considering Runnion's duty argument at all, as it was raised for the first time on reply. This contention is a non-starter. Federal courts may consider arguments raised on reply at their discretion. *See United States v. Wilson,* 962 F.2d 621, 627 (7th Cir. 1992) (exercising discretion to consider issue raised for the first time in a reply brief); *In re Leventhal,* No. 10-br-12257,

5

2012 WL 1067568, at *3 (Bankr. N.D. Ill. Mar. 22, 2012) ("Arguments offered for the first time in a reply are therefore ordinarily deemed waived. Nevertheless, courts have the discretion to overlook a waiver.") (internal citation omitted); *Digan v. Euro–American Branks, LLC,* No. 10-cv-799, 2012 WL 668993, at *2 (N.D. Ill. Feb. 29, 2012) ("Because this Court prefers to decide issues on the merits to the extent it is possible, it declines to exercise its discretion to deem the entirety of Digan's arguments waived. The Court will consider her arguments . . . ."). Moreover, consideration of the duty argument here was particularly appropriate, as it arose naturally on reply given the parties' relative positions regarding the application of the economic loss doctrine. *See generally* [29] at 4-5.

Plaintiff next attempts to distinguish *Cooney* by arguing that its negligence claim here is made pursuant to a general duty of care, while *Cooney* concerned a putative duty to safeguard confidential information. This argument is belied by Plaintiff's allegations. *See* [33] at 5 ("Runnion had a duty to exercise reasonable care in *safeguarding, securing, and protecting the sensitive information* sent by Landale.") (emphasis added). Plaintiff's argument also contravenes applicable precedent, which was cited by the Court in its previous decision. *See* [29] at 7 (citing *Dolmage v. Combined Ins. Co. of Am.*, No. 14-cv-3809, 2015 WL 292947, at *6 (N.D. Ill. Jan. 21, 2015) (rejecting plaintiff's attempt "to circumvent the Illinois Appellate Court's holding in *Cooney* by arguing that unlike the plaintiff in *Cooney,* she is alleging that Defendant violated the well-established ordinary standard of care")).

6

Finally, Plaintiff suggests that *Cooney* is not controlling here because, *inter alia*: (1) Runnion had prior knowledge of a data breach; (2) Runnion is not a data collector; (3) Plaintiff's injury was foreseeable, such that this Court should infer the existence of a duty under the seminal case of *Palsgraf v. Long Island Railroad*, 248 N.Y. 339 (1928) (Cardozo, J.); (4) Runnion created a situation conducive to John Doe's criminal acts; and (5) Runnion gratuitously undertook a duty to safeguard Plaintiff's information. [32] at 4-12.

Each of these arguments fundamentally misapprehends the relatively simple task before the Court today. The only pertinent question is whether the Illinois Supreme Court would conclude that Runnion was obligated to safeguard Plaintiff's confidential information as a matter of Illinois tort law. In *Cooney* the Illinois Appellate Court answered this question in the negative, and there is no indication that the Illinois Supreme Court would disagree. The Court declines "to adopt a substantive innovation in Illinois law." *Worix v. MedAssets, Inc.*, 869 F. Supp. 2d 893, 897-98 (N.D. Ill. 2012) (internal quotation omitted). Accordingly, Plaintiff's motion for reconsideration is denied.

### B. Defendant's Motion to Dismiss

Defendant's current motion to dismiss concerns Plaintiff's claims for breach of express contract and breach of implied contract. The Court analyzes these claims together, as their elements substantially overlap. *Compare VanDerMolen v. Washington Mutual Finance, Inc.*, 835 N.E.2d 61, 69 (Ill. App. Ct. 2005) (required elements for a breach of express contract claim under Illinois law are: (1) the

existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) a breach by the defendant; and (4) an injury) *with New v. Verizon Commc'ns, Inc.*, 635 F. Supp. 2d 773, 782-83 (N.D. Ill. 2008) ("to prove an implied contract the party asserting the contract must show the same elements as an express contract, as well as a meeting of the minds and a mutual intent to contract").

Runnion argues that Plaintiff's breach of contract claims fail because: (1) Plaintiff has failed to perform its obligations; (2) Plaintiff has not identified "some written and material provision of the written contract that has been breached"; (3) Plaintiff has failed to "state a cause of action for breach of an implied duty of good faith and fair dealing"; and (4) as to the implied contract claim only, Plaintiff has failed to allege the requisite "meeting of the minds." [35] at 3-7. The Court addresses each argument in turn.

### 1. Plaintiff's Performance

To be sure, performance by the plaintiff is an essential element of breach of contract claims under Illinois law. *See Veath v. Specialty Grains, Inc.*, 546 N.E.2d 1005, 1013 (Ill. App. Ct. 1989) ("It is a fundamental principle of the law that in order for one to recover upon a contract, he must have performed his part of the contract.") (internal quotation omitted); *see also 360networks Tenn., LLC v. Illinois Cent. R. Co.*, No. 05-cv-3198, 2010 WL 2167394, at *2 (N.D. Ill. May 28, 2010) (To "recover for a breach of contract, a plaintiff must prove, *inter alia,* that it complied with all of its material obligations under the contract.") (internal quotation omitted).

8

Plaintiff concedes that it was contractually obligated to pay Runnion the purchase price of the truck-mounted crane, and that it instead sent those funds to John Doe. [37] at 4. Plaintiff nevertheless contends that its breach of contract claims remain viable, as its non-performance was precipitated by Runnion's breach. *Id.* (citing *Cummings v. Beaton & Assocs., Inc.*, 618 N.E.2d 292, 303 (Ill. App. Ct. 1992)); *see also Richelieu Foods, Inc. v. New Horizon Warehouse Distribution Ctr., Inc.*, 67 F. Supp. 3d 903, 911-12 (N.D. Ill. 2014) (wrongful prevention doctrine precludes a defendant "who prevents the fulfillment of a condition" from defeating "liability by asserting the failure of the condition he himself has rendered impossible").

The Court agrees. Plaintiff has competently alleged that Runnion agreed to "safeguard any sensitive information from disclosure to third parties," Runnion breached this obligation, and Runnion's breach occasioned Landale's non-performance. [33] at 1-13. These allegations, taken as true for the purposes of the present motion only, qualify for application of the wrongful performance doctrine.

### 2. Failure To Identify Written Provision

Defendant's suggestion that Plaintiff was obligated to identify "some written and material provision of the written contract that has been breached," [35] at 4, misconstrues federal pleading standards. Even though "Plaintiff [still] has not attached" the full complement of contractual documents related to the sale here, the Court must nevertheless "accept Plaintiff's factual allegations as true and draw all reasonable inferences in Plaintiff's favor." *Dolmage*, 2015 WL 292947, at \*7; *see*

9

*also Odeluga v. PCC Cmty. Wellness Ctr.*, No. 12-cv-07388, 2013 WL 4552866, at *7 (N.D. Ill. Aug. 27, 2013) ("Under Illinois state civil procedure, a plaintiff asserting a claim based on a written contract must attach that contract to her pleadings. Federal Rule of Civil Procedure 8, however, makes no similar demand and, instead, requires only a short and plain statement of the plaintiff's claims.") (internal quotation omitted).

In its Third Amended Complaint, Plaintiff alleges that: (1) Defendant had a previous security failure; (2) the parties discussed Defendant's previous security failure "[d]uring the negotiations" regarding the vehicle at issue; (3) the parties then entered into a sales contract; (4) Defendant's security was compromised again, resulting in damage to Plaintiff; and (5) Defendant's second security failure constituted a breach of its confidentiality obligations under the parties' sales contract. [33] at 1-6, 11-12. After drawing all reasonable inferences in Plaintiff's favor, it is plausible to surmise that the parties' sales contract included confidentiality obligations that addressed the security concerns discussed by the parties during their negotiations. At this early stage, "Plaintiff has sufficiently alleged that [the confidentiality obligations were] part of the contract between Plaintiff and Defendant." *Dolmage*, 2015 WL 292947, at *7.

### 3.     Implied Covenant of Good Faith and Fair Dealing

Defendant's argument that Plaintiff has failed to "state a cause of action for breach of an implied duty of good faith and fair dealing," [35] at 4, is a non-sequitur—no such cause of action exists under Illinois law. *See Spadoni v. United*

10

*Airlines, Inc.*, 47 N.E.3d 1152, 1165 (Ill. App. Ct. 2015) ("Illinois law does not recognize an independent cause of action for breach of implied duty of good faith and fair dealing in a contract."). Instead, the Court must determine whether Plaintiff has competently alleged a breach of the parties' contract, and the implied duty of good faith and fair dealing simply serves as "a construction aid in determining the intent of the parties where an instrument is susceptible of two conflicting constructions." *Id.* (internal quotation omitted). As discussed *supra*, Plaintiff's present allegations clear this hurdle.

### 4. Meeting of the Minds

Finally, Plaintiff's Third Amended Complaint competently alleges that the parties achieved the requisite meeting of the minds, in two separate statements that were absent from Plaintiff's earlier pleadings: "Upon information and belief, Runnion agreed to complete the transaction with the intent to safeguard any sensitive information from disclosure to third parties," and the "parties' mutual intent constitutes a meeting of the minds regarding safeguarding sensitive information from disclosure to third parties." [33] at 12.

Defendant suggests these allegations are violative of the parol evidence rule, "conclusory," and implausible. *See generally* [35] at 6-7; [38] at 3. These arguments overstate Plaintiff's burden at this early juncture. Plaintiff has plausibly alleged that, in light of Runnion's previous security breaches, the parties mutually agreed to safeguard each other's information as part of their sales agreement. *See supra* at 11.

## IV. Conclusion

For the reasons discussed above, both Plaintiff's motion for reconsideration [31] and Defendant's motion to dismiss [34] are denied.

Date: April 3, 2017

Entered:

_____
John Robert Blakey
United States District Judge