**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| Landale Signs and Neon, Ltd., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-07619 |
| | ) | |
| Runnion Equipment Co., and | ) | |
| John Doe, | ) | |
| | ) | |
| Defendants. | ) | |

**Plaintiff's Answer to Defendant Runnion Equipment Company's Statement
of Undisputed Facts and Plaintiff's Additional Facts**

Plaintiff, Landale Signs and Neon, Ltd. ("Landale"), through counsel,
Patterson Law Firm, LLC, and for its Answer to Defendant Runnion
Equipment Company's ("Runnion") Statement of Undisputed Facts,
states as follows:

1. The Plaintiff, LANDALE SIGNS AND NEON, LTD. (hereinafter
referred to as "Landale"), is a Canadian corporation with its principal
place of business in Edmonton, Alberta, Canada. (Plaintiff's Third
Amended Complaint, paragraph 4.)

**Answer:** Undisputed.

2. The Defendant, Runnion, is an Illinois corporation with its
principal place of business located in Lyons, Illinois. (Plaintiff's Third
Amended Complaint, paragraph 5.)

**Answer:** Undisputed.

3. The matter in controversy here exceeds, exclusive of interest and costs, the sum of seventy-five thousand dollars ($75,000.00). (Plaintiff's Third Amended Complaint, paragraph 7.)

**Answer:** Undisputed.

4. Jurisdiction in this action is predicated on diversity of the citizenship of the Plaintiff and Defendants pursuant to 28 U.S.C. §1332, and venue is proper in this District Court pursuant to 28 U.S.C. §1391. (Plaintiff's Third Amended Complaint, paragraph 8.)

**Answer:** Undisputed.

5. Darrell Brown, as President of Landale, contacted Patrick Runnion, as Chief Executive Officer of Runnion, personally to initiate discussions and negotiations regarding a particular type of truck-mounted crane. (Brown dep., p. 24.)

**Answer:** Undisputed.

6. In April of 2016, Landale entered into a contract with Runnion for the purchase of a truck-mounted crane for $87,625.00. (Plaintiff's Third Amended Complaint, paragraph 10.)

**Answer:** Undisputed.

7. Apart from telephone communications, Landale and Runnion also communicated via e-mail to negotiate and finalize the terms of the agreement. (Plaintiff's Third Amended Complaint, paragraph 11.)

**Answer:** Undisputed.

8. Patrick Runnion signed the contract between the parties on behalf of Runnion Equipment on April 11, 2016. (Patrick Runnion deposition, p. 68.)

**Answer:** Undisputed.

9. Darrell Brown signed the contract on behalf of Landale on April 12, 2016. (Runnion dep., p. 69; Darrell Brown dep., p. 49.)

**Answer:** Undisputed.

10. The contract that existed between the two parties was utilized as an exhibit at Darrell Brown's deposition. It is also included in Exhibits 17 and 10 to the deposition of Patrick Runnion. (Brown dep., p. 83, Exhibit 1, pages 3 "A" and 4 "A"; Runnion dep., Exhibit 10, Exhibit 17.)

**Answer:** Disputed that Brown Exhibit 1, pages 3 "A" and 4 "A" constitutes the contract as the cited testimony from Darrell Brown's deposition does not support the proposition. Darrell Brown testified that the first three pages of Brown Exhibit 7 were the contract. Ex. A, Brown, 118:20-119:20, Brown Ex. 7. Brown Ex. 1, pages 3-5A are the same pages. The contract price was $88,000. The contract was then changed to add a $125 document fee for a total of $125. Ex. A, Brown, 56:12-20, Brown Ex. 1 (page 2 C). The contract was subsequently modified to reduce the purchase price by $500 as Runnion could not produce the NAFTA document that would permit the vehicle to be exempt from duty. Brown, 56:21-57:6. The contract price was therefore changed to $87,625

3

through the parties' agreement. Ex. A, Brown, 61:3-10, Brown Ex. 1 (page 2 D).

11. When the completely signed contract of April 12, 2016 was returned to Runnion, it was accompanied by a facsimile cover sheet. However, the document in question was transmitted via e-mail to Runnion. (Runnion dep., p. 69, Exhibit 20.)

**Answer:** Disputed. Darrell Brown testified "I presume I faxed that." Ex. A, Brown, 84:15-22.

12. The E-mail containing the signed contract was sent on April 12, 2016 at 1:27 p.m. (Runnion dep., pp. 69-70.)

**Answer:** Disputed. The cited deposition testimony and the referenced exhibit state it was sent on April 13, 2016. Ex. B, Runnion, 69:16-23.

13. The e-mail which accompanied the signed contract that was forwarded to Runnion originated from a gmail address listing Darrell Brown as the sender. (Runnion dep., p. 70.)

**Answer:** Undisputed.

14. The same gmail address followed the signed contract transmittal of April 12, 2016. (Runnion dep., p. 71.)

**Answer:** Disputed as the contract was transmitted on April 13, 2016. Ex. B, Runnion, 69:16-23.

15. The written contract as executed by the parties contained the following language:

4

This document contains the terms of sale. The entire contract between Seller and Buyer is contained in this Sales Order; no alleged oral promises or conditions not set forth herein shall be binding upon Seller or Buyer, and any prior negotiations between the parties are merged into the terms of this document. (Runnion dep., Exhibit 17, first paragraph; Brown dep., Exhibit 1, page 3 "A".)

**Answer:** Undisputed.

16. The written contract executed between the parties does not contain any language which obligates either Runnion or Landale to maintain security for any information pertaining to either party or their negotiations. (Runnion dep., Exhibit 17; Brown dep., Exhibit 1, page 3 "A".)

**Answer:** Undisputed.

17. Runnion's personnel can be reached at the basic e-mail address of "@runnionequipment.com". For instance, Patrick Runnion may be contacted by utilizing "prunnion@runnionequipment.com ". (Runnion dep., Exhibit 15.)

**Answer:** Undisputed.

18. Darrell Brown's e-mail address at Landale is "darrell@landalesigns.com". (Brown dep., p. 53; Runnion dep., p. 27.)

**Answer:** Undisputed.

19. The record establishes that several sets of divergent wiring instructions were received by Landale in conjunction with the parties' transaction. It is undisputed that Landale received initial wiring instructions from an e-mail address listed as "runnionequpment" (note

the misspelling of "equipment") on April 18, 2016. (Brown dep., pp. 54,
58, Runnion dep., Exhibit 16.) These wiring instructions requested that
the funds for the purchase of the truck-mounted crane be sent to
someone not named Runnion in a state other than Illinois; namely,
Michael Mitch LLC at BB&T Bank in Cary, North Carolina. (Runnion
dep., Exhibit 16.)

**Answer:** Undisputed.

20. Later, on May 12, 2016, Landale received a second set of wiring
instructions directing that the funds be transferred to yet another entity
not named Runnion and in a state other than Illinois. The second set of
wiring instructions directed Landale to send the funds to Prime C.
Contractors at the Sun Trust Bank in Alexandria, Virginia. (Runnion
dep., Exhibit 16.) These same instructions were also forwarded from an
e-mail address listing "runnionequpment.com " as the same source as
the April 18, 2016 initial set of wiring instructions. (Brown dep., p. 60;
Runnion dep., Exhibit 16.)

**Answer:** Undisputed.

21. Landale ignored the initial instructions of April 18, 2016 because
the completion of documentation necessary for shipment of the truck-
mounted crane from the United States to Canada through an
intermediate broker had not yet been completed. However, by the time
the second set of wiring instructions of May 12, 2016, the necessary
documentation had been completed. Consequently, on Friday May 13,

2016, Darrell Brown directed that the funds for purchase be forwarded to Prime C. Contractors at the Sun Trust Bank in Alexandria, Virginia; again, pursuant to the second set of instructions referenced above.

**Answer:** Undisputed.

22. The money for the purchase of the truck-mounted crane was transferred to Sun Trust Bank on Friday, May 13, 2016. By the following Monday, May 16, 2106, Darrell Brown began to realize that he was a victim of fraud by someone in Virginia. (Brown dep., p. 35.)

**Answer:** Undisputed.

23. On Tuesday, May 17, 2016, or four days after the funds had been transferred, Darrell Brown spoke to Patrick Runnion by telephone. (Brown dep., pp. 36-37.)

**Answer:** Undisputed.

24. At some point during that telephone conversation, Darrell Brown and Patrick Runnion discussed that Runnion had been receiving and responding to e-mails from Darrell Brown that utilized a gmail address. (Brown dep., pp. 37, 124.)

**Answer:** Undisputed.

25. During that same telephone conversation and in conjunction with the fraudulent transfer to Virginia, Patrick Runnion mentioned to Darrell Brown that he was aware of a similar fraudulent effort that had been attempted with regard to a proposed transaction involving Patrick Runnion's financial advisor. (Brown dep., p. 38; Runnion dep., pp. 35-

7

37.) However, this incident did not involve Runnion's e-mail address at "runnionequipment.com", but rather a personal e-mail.

**Answer:** Undisputed as to the first sentence. Landale objects to and moves to strike[1] the statement "However, this incident did not involve Runnion's e-mail address at "runnionequipment.com", but rather a personal e-mail" as it is wholly unsupported by the record in violation of Local Rule 56.1(a), which provides that the facts refer to the documents relied upon to support the facts set forth in the paragraph. Facts without citation are improper as there must be admissible evidence for allegations made in summary judgment. *Baines v. Walgreen Co.*, 863 F.3d 656, 662 (7th Cir. 2017).

26. Runnion Equipment Company utilizes detailed and specific wiring instructions. After the realization that two sets of fraudulent wiring instructions had been sent to Landale, Runnion forwarded a copy of their legitimate wiring instructions to Darrell Brown on May 18, 2016 at his landale.com e-mail address. (Brown dep. p. 75.)

**Answer:** Undisputed, except disputed that it was sent to landale.com email address as the email address was landalesigns.com. Ex. A, Brown, 53:15-19.

27. In its Answers to Defendant's First Set of Interrogatories, Landale specifically stated:

---

[1] Pursuant to this Court's standing order on Summary Judgment Practice, Landale is including its objections to statements of fact in its Rule 56.1 statement rather than in a separate motion.

Mr. Runnion made no specific statements that he would protect Landale's information.

(Plaintiffs Answers to Defendant's Interrogatory No. 10.)

**Answer:** Undisputed.

28. At his deposition, Darrell Brown testified that he would define sensitive information as personal information. (Brown dep., p. 101.)

**Answer:** Disputed. Darrell Brown testified that sensitive information was "[a]ny information that we would give to somebody we're doing business with, is personal, and it's within our—should be kept—what word do I use—should be kept under cover, if you will. Sensitive information—we assume that they're going to have a security protocol to within their company to protect information that we would send them." Ex. A, Brown, 100:23-101:8.

29. During his deposition, Darrell Brown admitted that no personally sensitive information had been involved in the communications and negotiations between Landale and Runnion regarding the truck-mounted crane. (Brown dep., p. 102.)

**Answer:** Undisputed that no "personally sensitive information" was involved, but disputed to the extent that this references business sensitive information as there was information that was revealed that concerned the transaction that was expected to be confidential. Ex. A, Brown, 102:17-103:1; 104:8-11.

30.  Also during the course of his deposition, Darrell Brown expressed the opinion that he believed the terms of the sales agreement and any personal information should be kept confidential. (Brown dep., p. 102.)

**Answer:** Undisputed.

31.  In his continuing testimony, Darrell Brown further admitted that all information regarding Landale and Runnion that were included in the negotiations and communications, except for the purchase price, could be found by accessing each party's respective website. (Brown dep., p. 103.)

**Answer:** Disputed, as the testimony was that the "business deal itself" was unavailable publicly and the information exchanged in this deal was similarly unavailable, as without the private communications the third party could not have redirected the wire.  Ex. A, Brown, 104:8-22.

32. Darrell Brown admitted in his deposition that he did not notice any delay in the receipt of e-mails from Runnion until certain delays were pointed out to him by a Runnion employee following the transfer of funds to the fraudulent individual in Virginia. (Brown dep., p. 106.)

**Answer:** Undisputed.

33.  In his deposition testimony, Darrell Brown definitively stated that he would never do business with someone whom he did not feel acted in good faith and in a fair deal. (Brown dep., p. 108.)

**Answer:**  Undisputed.

34. Darrell Brown further testified in his deposition as to his belief that Patrick Runnion absolutely proceeded in good faith. (Brown dep., p. 109.)

**Answer:** Undisputed that he testified that Pat Runnion proceeded in good faith up until the time of the money disappearance, disputed that he subsequently proceeded in good faith. Ex. A, Brown, 109:11-18.

35. Darrell Brown also admitted in his deposition testimony that he had no prior dealings with Runnion Equipment Company. (Brown dep., p. 117.)

**Answer:** Undisputed.

36. During his deposition, Patrick Runnion testified that in his opinion it would be the custom and practice to maintain confidentiality of negotiations during an equipment sale. (Runnion dep., p. 44.)

**Answer:** Undisputed.

37. Patrick Runnion testified that from his experience in a sales negotiation, the confidential information would include only the specific pricing and the banking information of the buyer and seller. (Runnion dep., pp. 46-47.) The confidentiality of the pricing was for the protection of Runnion in preventing a proposed transaction being undercut by a competitor. The confidentiality of the banking information is both necessary and obvious.

**Answer:** Disputed that Pat Runnion testified that the confidential information would include only the specific pricing and the banking

information of the buyer and seller, as Pat Runnion was asked the following questions and gave the following answers: "you believe there is an obligation, for example, to keep the parties banking details confidential as between the two parties engaging in the transaction, correct? A. Certainly. Q. The details of the negotiations you expect that the seller of equipment in the equipment sales industry would not be divulging the details of the negotiation to third parties of the transaction, correct? A. That's correct." Ex. B, Runnion, 47:3-14. Pat Runnion also testified that "when we start getting into negotiation with somebody that's what I would consider confidential." Ex. B, Runnion 67: 13-15.

Landale objects to and moves to strike the statement "the confidentiality of the pricing was for the protection of Runnion in preventing a proposed transaction being undercut by a competitor" as it is unsupported by the cited testimony or the record.

38. The only information upon which both sides agree as being confidential and within the context of their discussions, was the pricing information and Runnion's banking information . Both of these might be at risk if disclosed to a third party.

**Answer:** Disputed, as all parties testified that the details of the negotiations themselves as well as customer information, not just the pricing, was confidential. Ex. B, Runnion, 47:3-14, 67:13-15; Ex. C, Ryce, 23:17-24:6, 25:11-26:9, Ex. A, Brown, 102:17-103:1; 104:8-19.

Landale moves to strike this statement of fact as Runnion has cited to nothing whatsoever within the record in violation of Local Rule 56.1, which provides that the statement of fact "shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." Facts without citation are improper as there must be admissible evidence for allegations made in summary judgment. *Baines v. Walgreen Co.*, 863 F.3d 656, 662 (7th Cir. 2017).

**Landale's Statement of Additional Facts**

Landale states the following facts pursuant to Local Rule 56.1(b)(3)(C):

1. Landale Signs and Neon, Ltd. ("Landale") manufactures custom signs and on-premise advertising. Ex. A, Brown, 10:8-10.

2. Landale was looking to purchase a truck-mounted crane (the "crane") from Runnion Equipment Co. ("Runnion") that was heavier duty, had a higher capacity and was heavier duty than the one it had. Ex. A, Brown, 18:16-19:9.

3. Pat Runnion has been working in equipment sales at Runnion Equipment since 1975, and has been the President and CEO of the company, as well as working in outside sales. Ex. B, Runnion, 10:2-4, 43:8-11.

4. During negotiations, Pat Runnion, the individual at Runnion with whom Darrell Brown was negotiating, had indicated that he had a

13

partner who owned the crane.  Ex. A, Brown, 62:4-18.  Darrell Brown did
not know the identity of the partner because it was "none of my
business."  Ex. A, Brown, 66:6-9.

5.   Landale and Runnion entered into an agreement for the sale of
the crane.  Ex. A, Brown, 118:20-119:20, Brown Ex. 7 (pages 1-3).  More
legible copies of the first three pages of Brown Ex. 7 can be found at
Brown Ex. 1 (pages 3-5 A).

6.   The contract price was $88,000.  The contract was then changed
to add a $125 document fee.  Ex. A, Brown, 56:12-20, Brown Ex. 1 (page
2 C).  The contract was subsequently changed to reduce the purchase
price by $500 as Runnion could not produce the NAFTA document that
would permit the vehicle to be exempt from duty, though the contract did
not say anything about such a document.  Ex. A, Brown, 56:21-57:6,
Brown Ex. 7.  The contract price was therefore changed to $87,625
through the parties' agreement.  Ex. A, Brown, 61:3-10, Brown Ex. 1
(page 2 D).

7.   Pat Runnion initially emailed Darrell Brown at
"darrell@landalesigns.com" and continued using this address until at
least April 20, 2016.  Ex. B, Runnion 47:14-24, Runnion Ex. 12.  By
April 26, 2016, Pat Runnion was emailing Darrell Brown at
Darrell.landalesigns@gmail.com.  Ex. B, Runnion 28:1-29:10, Runnion
Ex. 13.

8.  Runnion's agent had been sending emails (including the eventual wire instructions) to a gmail.com account rather than an actual Landale Signs email account.  Ex. A, Brown, 77:17-25.

9.  Willie Messuck (a Runnion employee), on a call following the wire, stated that Darrell Brown's address had changed to Gmail.  Ex. A, Brown, 37:1-5.

10. This change, from an actual custom domain (@landalesigns.com) to a gmail.com address was not mentioned to Darrell Brown until *after* the wire transfer, in which Darrell Brown stated, "It's never been gmail. It will never be gmail."  Ex. A, Brown 36:17-37:12.

11. Landale transferred the funds pursuant to the wire instructions from someone purporting to be from Runnion.  Ex. A, Brown, 86:16-24.

12. Landale expected that the information being exchanged, the deal going back and forth, was to be kept between Runnion and Landale.  Ex. A, Brown, 102:17-103:1; 104:8-11.

13. The information exchanged between Runnion and Landale was not kept between the parties, as somebody was able to access the information and take Landale's money as a result.  Ex. A, Brown 102:21-103:1, 104:17-19.

14. There's a custom and practice in the equipment sales industry of maintaining the confidentiality of the negotiations of the equipment sale for anyone who's not involved in the sale.  Ex. B, Runnion 44:5-13.

15. There's an obligation of keeping the parties' banking details confidential as between the parties engaging in the equipment sales transaction.  Ex. B, Runnion 47:3-8.

16. The seller of equipment in an equipment sales transactions would be expected to not disclose the details of the negotiation to third parties. Ex. B, Runnion 47:9-14.

17. Pat Runnion testified, "I'm not out running around telling people that I'm trying to sell a crane to X, Y, Z company, that is confidential, between myself and X, Y, Z."  Ex. B, Runnion 43:20-44:2.

18. Pat Runnion testified that "when we start getting into negotiation with somebody that's what I would consider confidential."  Ex. B, Runnion 67: 13-15.

19. Janice Ryce, the Runnion employee who manages day to day transactions as well as implements procedures as they relate to accounting processes and business, testified that customer information is confidential within equipment sales at Runnion.  Ex. C, Ryce 11:5-11, 23:17-24:6.

20. The details of Runnion's transactions are confidential and it is inappropriate to share them.  Ex. C, Ryce 25:11-26:1.

21. Keeping customer and transaction information confidential is "common business practice."  Ex. C, Ryce 26:3-9.

22. Following the realization that the wire instructions from the party purporting to be Runnion were not Runnion's wire instructions, Landale

16

both contacted the authorities and the bank, but were told the funds were gone. Ex. A, Brown 42:6-17; 90:12-24.

23. After the wire was transferred but not received, Darrell Brown was on the phone with Neil Swindlehurst, Landale's external IT consultant, and Pat Runnion when Pat Runnion admitted that a prior impersonation and interception attempt such as happened in the Landale transaction had happened with Pat Runnion before. Ex. A, Brown, 36:13-24; 38:13-23.

24. Although Runnion was defined in the interrogatories as including its officers, Runnion denied under oath that there had been prior interference with electronic communications. Ex. E, Landale's Interrogatories; Ex. F, Runnion's Answers to Interrogatories.

25. Runnion also denied in its answer that Pat Runnion "was aware of potential interference to his e-mail account." Ex. G, Answer to Third Amended Complaint, ¶ 24.

26. Notwithstanding these denials, Pat Runnion admitted at his deposition that his financial advisor received a fraudulent email purporting to be from Pat Runnion asking to be sent money. Ex. B Runnion, 35:21-36:13.

27. Following the interference, Neil Swindlehurst determined that the intrusion originated at Runnion. Ex. D, Swindlehurst, 26:8-22.

28. After Runnion's IT consultant gave his deposition, Neil Swindlehurst opined that Runnion's IT setup, including the use of an

external IT service to do much of the management, devices that can be used on unsecure or public wifi networks to connect with the email, the setup of Runnion's wifi network with passwords being distributed, the physical condition of Runnion's hardware, the use of NAS systems of inadequate security, and the use of personal emails at work contrary to policy provides further support for his opinion that Runnion was the source of the intrusion. Ex. H, Swindlehurst Declaration.

29. After the Landale transaction, Runnion began requiring customers to call to verify the wire instructions to safeguard from fraudulent activity, and also added language on the wire transfer instructions directing the customers to do so. Ex. C, Ryce, 22:11-23:3; 27:6-28:4.


Respectfully Submitted,

Date: November 26, 2018

/s/Michael D. Haeberle
Thomas E. Patterson (No. 3128587)
Michael D. Haeberle (No. 6309164)
Peter J. Evans (No. 6312759)
Patterson Law Firm, LLC
200 W. Monroe St., Suite 2025
Chicago, IL 60606
(312) 223-1699
Fax: (312) 223-8549
tpatterson@pattersonlawfirm.com
mhaeberle@pattersonlawfirm.com
pevans@pattersonlawfirm.com
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| Landale Signs and Neon, Ltd., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-07619 |
| | ) | |
| Runnion Equipment Co., and | ) | |
| John Doe, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**Exhibit Index for
Plaintiff's Answer to Defendant Runnion Equipment Company's Statement
of Undisputed Facts and Plaintiff's Additional Facts**

**Description**

Exhibit A, Deposition of Darrell Brown

Exhibit B, Deposition of Patrick Runnion

Exhibit C, Deposition of Janice Ryce

Exhibit D, Deposition of Neil Swindlehurst

Exhibit E, Landale's Interrogatories

Exhibit F, Runnion's Answers to Interrogatories

Exhibit G, Runnon's Answer to Third Amended Complaint

Exhibit H, Swindlehurst Declaration