**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| Landale Signs and Neon, Ltd., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Runnion Equipment Co., and ) <br> John Doe, ) <br> ) <br> Defendants. ) | Case No. 1:16-cv-07619 |

**Plaintiff's Memorandum in Opposition to Motion for Summary Judgment**

Now comes Plaintiff, Landale Signs and Neon, Ltd. ("Landale"), by and through its undersigned attorneys, Patterson Law Firm, LLC, and for its Memorandum in Opposition to Defendant's Motion for Summary Judgment, states as follows:

**Introduction**

Landale purchased a truck-mounted crane (the "crane") from Defendant Runnion Equipment Co. ("Runnion"). Runnion's systems, however, had been compromised, and were set up in such a way that allowed intrusion easy due to lax security and systems. A third party compromised Runnion's systems, posed as Runnion's employees, and provided wire instructions to Landale that caused Landale to wire the funds to the intruding party.

All parties testified in their depositions that it is standard practice that, in an equipment sale transaction such as the one at issue, the parties all have an obligations to keep the negotiations confidential.

1

Defendant's Motion for Summary Judgment attempts to disregard its own principal's testimony as well as that of its employee. The Court should reject this invitation to ignore an obligation that all parties agree exists.

## Summary Judgment Standard

Summary judgment is inappropriate where there are disputed issues of material fact. Fed. R. Civ. P. 56(a); *Protective Life Ins. Co. v. Hansen*, 632 F.3d 388, 391-92 (7th Cir. 2011). A genuine issue of material fact exists when, based on the evidence, a reasonable jury could find in favor of the non-moving party. *Van Antwerp v. City of Peoria*, 627 F.3d 295, 297 (7th Cir. 2010). The court must construe all facts and draw all reasonable inferences in favor of the non-moving party. *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009).

## Factual Background

### I. The agreement between Landale and Runnion.

The facts relevant to this motion are minimal. Landale manufactures custom signs and on-premise advertising. SOF 1.[1] Landale was looking to purchase a crane from Runnion that was heavier duty, had a higher capacity and was heavier duty than the one it had. SOF 2. Pat Runnion has been working in equipment sales at Runnion Equipment since 1975,

---

[1] Landale's additional facts in its Rule 56.1 statement of facts are referred to as "SOF ___," with the number corresponding to the numbered factual paragraph.

and has been the President and CEO of the company, as well as working in outside sales. SOF 3.

Landale and Runnion entered into an agreement for the sale of the crane. SOF 5. The contract price was $88,000, which was later increased to add a document fee then decreased when Runnion could not produce a NAFTA document, for a total contract price of $87,625. SOF 6. Landale transferred the purchase price pursuant to the wire instructions from someone purporting to be from Runnion. SOF 11.

> **II. The parties both agreed to keep the communications and information concerning the transaction confidential pursuant to their practice and industry custom.**

Landale expected that the information being exchanged, the deal going back and forth, was to be kept between Runnion and Landale. SOF 12.

Pat Runnion agreed, admitting that there's a custom and practice in the equipment sales industry of maintaining the confidentiality of the negotiations of the equipment sale for anyone who's not involved in the sale. SOF 14. Pat Runnion admitted there's an obligation of keeping the parties' banking details confidential as between the parties engaging in the equipment sales transaction. SOF 15. Pat Runnion also admitted that the seller of equipment in an equipment sales transactions would be expected to not disclose the details of the negotiation to third parties. SOF 16.

Pat Runnion testified, "I'm not out running around telling people that I'm trying to sell a crane to X, Y, Z company, that is confidential,

between myself and X, Y, Z." SOF 17. He also testified that "when we start getting into negotiation with somebody that's what I would consider confidential." SOF 18.

Janice Ryce, the Runnion employee who manages day to day transactions as well as implements procedures as they relate to accounting processes and business, testified that customer information is confidential within equipment sales at Runnion. SOF 19. She testified that the details of Runnion's transactions are confidential and it is inappropriate to share them, and that keeping customer and transaction information confidential is "common business practice." SOF 20-21.

Unfortunately, the information exchanged between Runnion and Landale was not kept between the parties, as somebody was able to access the information and take Landale's money as a result. SOF 13.

### III. Runnion caused the interference.

Following the interference, Neil Swindlehurst, Landale's IT consultant, determined that the intrusion originated at Runnion. SOF 27. This opinion was bolstered by further information concerning Runnion's IT setup. After Runnion's IT consultant gave his deposition, Neil Swindlehurst opined that Runnion's IT setup, including the use of an external IT service to do much of the management, devices that can be used on unsecure or public wifi networks to connect with the email, the setup of Runnion's wifi network with passwords being distributed, the physical condition of Runnion's hardware, the use of NAS systems of

inadequate security, and the use of personal emails at work contrary to policy provides further support for his opinion that Runnion was the source of the intrusion. SOF 28.

After the wire was transferred but not received, Darrell Brown was on the phone with Neil Swindlehurst and Pat Runnion when Pat Runnion admitted that a prior impersonation and interception attempt such as happened in the Landale transaction had happened with Pat Runnion before. SOF 23. Although Runnion was defined in the interrogatories as including its officers, Runnion denied under oath that there had been prior interference with electronic communications. SOF 24. Runnion also denied in its answer that Pat Runnion "was aware of potential interference to his e-mail account." SOF 25. Notwithstanding these denials, Pat Runnion admitted at his deposition that his financial advisor received a fraudulent email purporting to be from Pat Runnion asking to be sent money. SOF 26.

After the Landale transaction, Runnion began requiring customers to call to verify the wire instructions to safeguard from fraudulent activity, and also added language on the wire transfer instructions directing the customers to do so. SOF 29.

Following the realization that the wire instructions from the party purporting to be Runnion were not Runnion's wire instructions, Landale both contacted the authorities and the bank, but were told the funds were gone. SOF 22.

Landale brought this action to recover the funds from Runnion due to Runnion having caused the loss. Landale's Third Amended Complaint, the operative complaint, contains pending claims against Runnion for Breach of Contract (Count IV) and Breach of Implied Contract (Count V, in the alternative to Count IV). Third Amended Complaint, Dkt. 33. These claims contend that Runnion had an obligation to maintain the confidentiality of the negotiations between the parties yet failed to do so by permitting a third party to access the negotiations and divert the wire, causing the loss of Landale's funds.

## Argument

Runnion's Motion for Summary Judgment, though lengthy, argues essentially that, notwithstanding its CEO and employee's admission that Runnion had a duty to keep the details of the transaction between Landale and Runnion confidential, no such obligation exists.[2]

### I. There is a breach of the written agreement.

Runnion argues that there is no specific language in the written agreement between the parties requiring protection of sensitive information. This is, undoubtedly, true. Landale has never claimed, however, any such written provision in the contract. Runnion's argument is a straw man.

Instead, Landale's Count IV, Breach of Contract, alleges that the written contract contains an implied agreement to maintain

---

[2] Runnion has disregarded Local Rule 7.1's 15 page limit without leave of Court.

confidentiality over sensitive information disclosed during the transaction, which is a standard custom and practice within the industry. Third Amended Complaint, Dkt. 33, ¶¶ 55, 57.

"Under Illinois law, parties to an agreement are bound by the usages of the trade in which they are mutually engaged and are presumed to have contracted with reference to, and knowledge of, those usages." *David Copperfield's Disappearing, Inc. v. Haddon Advert. Agency, Inc.*, 897 F.2d 288, 293 (7th Cir. 1990). Trade usages may supplement the terms in a contract. *Gord Indus. Plastics, Inc. v. Aubrey Mfg., Inc.*, 431 N.E.2d 445, 450 (Ill. App. Ct. 1982). *See also*, 810 ILCS 5/1-303(c) and (d) (trade usages, which are practices regularly applied in a trade to justify an expectation that they will be observed in the instant transaction, may supplement the terms of an agreement). Whether a trade usage applies and to what extent is an issue of fact improper for resolution on summary judgment. *Leighton Indus. v. Callier Steel Pipe & Tube, Inc.*, No. 89 C 8235, 1991 U.S. Dist. LEXIS 1749, at *15 (N.D. Ill. Feb. 6, 1991) (whether the trade practice excluded the implied warranty of merchantability improper to determine on summary judgment).

Landale pled that the obligation to keep sensitive information confidential is standard within the industry. Third Amended Complaint, Dkt. 33, ¶ 57. The testimony, including that of Runnion's owner and employee, as well as Landale's principal, confirms that there is such a custom and practice of maintaining the confidentiality of the

negotiations. SOF 12, 14-21. At a minimum, there's an issue of material fact as to this issue. As, under Illinois law, trade usages are incorporated within contracts and supplement their terms, and a trade usage of keeping information confidential exists, the duty was incorporated within the contract between Runnion and Landale. Count IV is therefore proper and summary judgment should be denied.[3]

## II. Count V is proper as there was an agreement to safeguard sensitive information that is not supplanted by the integration clause in the parties' agreement.

### a. The evidence demonstrates that there was an agreement to safeguard sensitive information.

Count V alleges that Landale and Runnion entered into an implied agreement to safeguard sensitive information from disclosure from third parties. Third Amended Complaint, Dkt. 33. Landale alleged Runnion in fact agreed to undertake the transaction with the intent to safeguard such information, which understanding is standard practice and a custom within the industry. Third Amended Complaint, Dkt. 33, ¶¶64-65. It is undisputable that both Landale and Runnion agreed to this. SOF 12, 14-21.

Runnion's Memorandum takes great liberties with the statements made in the depositions by all parties, claiming that there was nothing

---

[3] The non-existence of an obligation to keep information confidential is the only argument made as to Count IV in the Argument section of the Motion for Summary Judgment. Runnion has not appeared to challenge that it breached its obligations (except as detailed in Section III, *infra*) or dispute that Landale's performance was excused by Runnion's prior breach under the wrongful prevention doctrine as detailed in this Court's April 3, 2017 Order on Runnion's Motion to Dismiss. Dkt. 41.

sensitive other than bank information and the purchase price (which Runnion claims is solely for its protection)[4]. Memorandum, p. 16. Runnion's assertion of the facts is incorrect. Pat Runnion admitted there's a custom and practice in the equipment sales industry of maintaining the confidentiality of the negotiations of the equipment sale for anyone who's not involved in the sale. SOF 14. Such confidentiality was not limited by Pat Runnion's testimony to just bank account numbers and the purchase price. Runnion also admitted that the seller of equipment in an equipment sales transactions would be expected to not disclose the details of the negotiation to third parties. SOF 16.

Pat Runnion testified, "I'm not out running around telling people that I'm trying to sell a crane to X, Y, Z company, that is confidential, between myself and X, Y, Z." SOF 17. He also testified that "when we start getting into negotiation with somebody that's what I would consider confidential." SOF 18.

Janice Ryce, the Runnion employee who manages day to day transactions as well as implements procedures as they relate to accounting processes and business, testified that customer information is confidential within equipment sales at Runnion. SOF 19. She testified that the details of Runnion's transactions are confidential and it is

---

[4] As detailed in Landale's answer to Runnion's fact 37, there's no support in the record for the statement that the purchase price was kept confidential for Runnion's benefit only.

inappropriate to share them, and that keeping customer and transaction information confidential is "common business practice." SOF 20-21.

These statements demonstrate that there was the meeting of the minds and mutual intent to contract as to the obligation to keep information confidential sufficient to support an implied contract, one that was not limited merely to the purchase price and the parties' banking information. *See New v. Verizon Commc'ns, Inc.*, 635 F. Supp. 2d 773, 782-783 (N.D. Ill. 2008) ("to prove an implied contract the party asserting the contract must show the same elements as an express contract, as well as a meeting of the minds and a mutual intent to contract.") The parties were in complete agreement that the negotiations concerning the transaction were to be kept confidential between the parties. The Motion should be denied, as there's, at the very least, disputed factual issues as to the meeting of the minds as to the obligation to keep information confidential as well as the scope of this obligation.

### b. The integration clause does not defeat custom and practice.

Runnion also argues that the trade usage is precluded by the use of an integration clause.[5] This is not the case. Rather, issues that are distinct matters to be capable of existence as an independent legal act are outside the scope of an integration clause. *Midwest Builder Distrib. v. Lord & Essex*, 891 N.E.2d 1, 19 (Ill. App. Ct. 2007) (citing R. Lord,

---

[5] Runnion did not make this argument as to Count IV, but Landale's arguments in this section would apply against any such argument.

Williston on Contracts §33.23 at 678 (4th ed. 1999)). *Midwest Builder* provides a similar situation to the present case, where an integration clause in a subcontractor agreement was found to not preempt a prior agreement that dealt with remedies for a breach between the parties due to the difference in subjects between the agreements. *Id.* at 20. In this case, the contract between the parties is silent as to any obligation to keep information confidential, with the agreement not even touching on the subject. As confidentiality is an obligation not referenced in any manner in the contract, it therefore is outside of the integration clause's scope.

    The integration clause is also unavailing as a result of the UCC's treatment of trade usage and custom. Under the UCC, if the trade custom is not inconsistent with the terms of the primary agreement, it can be considered despite an integration clause unless it "'would certainly have been included in the document.'" *Id.* (quoting 810 ICS 5/2-202). The UCC explicitly provides for the use of trade usage despite the existence of an integration clause, providing "[t]erms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or

11

*supplemented* (a) by course of performance, course of dealing, or *usage of trade* (Section 1-303)." 810 ILCS 5/2-202 (emphasis added).

Courts have followed the plain language of the UCC in finding that an integration clause is insufficient to negate trade usage. *Allapattah Servs. v. Exxon Corp.*, 61 F. Supp. 2d 1308, 1314 (S.D. Fla. 1999) (quoting Hawkland, *Uniform Commercial Code Series* § 2-202:03 (1984) for the proposition that trade usage and custom and practice are "an integral part of the contract that they are not normally disclaimed by general language in the merger clause"). *See also* Lisa Bernstein, *Custom in the Courts,* 110 Northwestern University Law Review 63 (2015), 71 (the effectiveness of even a general clause opting out of all trade usages is unclear given the importance of trade usage).

There's no dispute that the industry custom of protecting the information conveyed in the negotiations exists and applied to the transaction between Landale and Runnion. There's similarly no dispute that the obligation to keep the negotiations confidential does not contradict any terms in the agreement between the parties. The custom is therefore applicable, notwithstanding the incorporation clause.

This case presents the precise type of situation where trade custom and usage is properly considered. The contract between the parties is the type of simple form that does not address many matters that are of no doubt important to the parties. The contract did not provide such basic assurances as to whether the crane was functional, whether the

12

engine ran, or whether the windshield was intact. SOF 5 (detailing the contract). Yet had the crane been non-operational upon arrival, there certainly would have been issues. The parties also operated outside the contract. Runnion provided a $500 discount when it could not get the NAFTA paperwork that should have accompanied the truck. SOF 6. There's nothing in the contract that required Runnion to provide a NAFTA certificate. SOF 6. Yet, just like a working engine and a windshield, it would be expected and Runnion in fact gave a credit despite the absence of contractual language. The contract was a sales order with very fine print terms on the back, hardly the type of well-negotiated contract that contemplates all contingencies.

The incorporation of trade custom and practice is intended for just such a situation. Not surprisingly, a one page terms and conditions sheet was silent on the obligation to keep information confidential. The parties, however, believed that such obligation existed in accordance with industry custom. The obligation was incorporated within the agreement between the parties as an industry custom that did not contradict the explicit terms of the agreement. The integration clause does nothing to evade such a custom, and summary judgment must be denied.

### III. There is evidence of Runnion's breach of the obligation to keep the information confidential.

Runnion, in a single sentence in its conclusion, states, "there is no factual evidence in the record that Runnion breached" its obligation to keep information confidential. Memorandum, p. 18. This argument,

13

made in passing in the conclusion, is incorrect as, at the very minimum, an issue of material fact exists. Swindlehurst has provided testimony and an expert disclosure, based on his actions taken following the wire, as well as based on information from Runnion's own IT person, that the intrusion originated at Runnion rather than at Landale. SOF 27-28. Runnion has provided nothing to the contrary. This creates, at the very minimum, an issue of material fact on this issue.

## Conclusion

Runnion entered into a form agreement with Landale for the sale of a crane. The agreement was silent on keeping the negotiations and communications confidential, but everyone agrees that keeping the confidentiality of negotiations is standard practice in the industry. Runnion permitted a third party to access the negotiations and redirect Landale's wire transfer. Now, Runnion claims that the industry custom it admits exists does not apply to the transaction. There's no basis for the Court to find otherwise, however, much less that there's no issue of material fact. Runnion's Motion for Summary Judgment should be denied.

Wherefore, Landale respectfully requests that this Court deny Runnion's Motion for Summary Judgment, and for such other relief as the Court deems proper under the circumstances.

                                                Respectfully Submitted,

Date: November 26, 2018      /s/Michael D. Haeberle
                                              Thomas E. Patterson (No. 3128587)
                                              Michael D. Haeberle (No. 6309164)
                                              Peter J. Evans (No. 6312759)
                                              Patterson Law Firm, LLC
                                              200 W. Monroe St., Suite 2025
                                              Chicago, IL 60606
                                              (312) 223-1699
                                              Fax: (312) 223-8549
                                              tpatterson@pattersonlawfirm.com
                                              mhaeberle@pattersonlawfirm.com
                                              pevans@pattersonlawfirm.com
                                              Attorneys for Plaintiff